IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

RASHEEM COLEMAN,                    )
                                    )
                    Plaintiff,      )        CIVIL ACTION
                                    )
v.                                  )        No.  07-3011-MLB
                                    )
DAVID R. MCKUNE, et al.,            )
                                    )
                    Defendant.      )
_____)

## MEMORANDUM AND ORDER

This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent answered, but petitioner has failed to file a traverse in response as ordered. (Docs. 2, 5.) Because the time-frame allowed for petitioner to file his traverse has passed, the matter is ripe for decision.[1] The application is DENIED for reasons set forth herein.

Petitioner was convicted of attempted first-degree premeditated murder and aggravated robbery following a jury trial and sentenced to almost thirty years in prison.  In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner has not rebutted the presumption.  Accordingly, the court incorporates the Kansas Court of Appeals' version of the facts:

> The charges in this case arose from the robbery of a store in Wichita called Gold and Diamond Traders. Two men, later identified as Aaron "Spud" Douglas and Mario "Ocho" Merrills, entered the store and demanded money and jewelry.

_____

[1] Petitioner's traverse was due on April 25, 2007.

The robbers took approximately $450 cash and various items of jewelry. During the course of the robbery, Merrills shot the owner of the store in the chest.

Coleman's involvement in the robbery was as an aider and abettor. Douglas and Merrills discussed the robbery with Coleman beforehand; Coleman knew the owner of the store and had been a customer. Indeed, Coleman alerted Douglas and Merrills to the fact that the owner of the store had a gun on the premises. Merrills then made the statement that if the owner pulled a weapon on him, it would be " 'the last mistake he makes.' "

Coleman and his girlfriend, Tiffany Mayson, drove Douglas and Merrills to the store and waited outside while the robbery unfolded. The group had walkie-talkies to communicate: One was in the car with Coleman and Mayson, and the other was in the store with Douglas and Merrills. Presumably in exchange for his involvement in the robbery, Coleman received 7 to 10 of the rings which were taken from the store.

Coleman was eventually taken into custody, charged with aggravated robbery and attempted first-degree murder, arraigned, and appointed counsel. Mayson, who had apparently not been charged with any offense, repeatedly attempted to contact Deputy District Attorney Kim Parker, who had filed the complaint in Coleman's case. Unbeknownst to Mayson, Coleman's case had been reassigned to Assistant District Attorney David Kaufman. Mayson's messages indicated she wanted to discuss possible plea arrangements for Coleman. While Coleman had not asked Mayson to call Parker, he was aware of her activities.

Thinking it would be inappropriate to return Mayson's telephone calls, Parker asked the Wichita Police Department to tell Mayson to redirect her inquiries to Assistant District Attorney Kaufman. Two police detectives eventually spoke with Mayson's grandmother, who informed them that Mayson was "laying low." The detectives asked the grandmother to pass along the message that Mayson's questions should be addressed to Kaufman, not Parker. When the grandmother mentioned to the detectives that Coleman wanted to cooperate or make a deal, they informed her that Coleman had been appointed counsel and if Coleman wanted to talk, he had to contact them.

The grandmother's recollection of the conversation was somewhat different. According to her, the detectives told her that they thought Coleman was a good kid and did not have anything to do with the robbery. She also claimed that the detectives told her that they wanted Coleman to contact them so they could make a deal. She then relayed that

message to Coleman.

Based on this information, Coleman contacted one of the detectives the following day. Coleman waived his Miranda rights and acknowledged, in writing, that he had initiated the contact with the police. In a taped statement, Coleman admitted his involvement in the robbery.

Defense counsel filed a motion to suppress the tape, arguing that the detectives improperly induced Coleman to contact them and confess. This argument was based on Mayson's grandmother's version of the events surrounding her conversation with the detectives. The trial court denied Coleman's motion, noting that the issue came down to the credibility of witnesses. The judge opined that Coleman was "obviously bright and intelligent" and that "he is not naive of [the] criminal justice system." However, the trial court found that the police did nothing improper during their conversation with Mayson's grandmother and that Coleman and Mayson solicited the police interview. The tape was admitted into evidence at trial over defense counsel's renewed objection.

Coleman was ultimately convicted of both aggravated robbery and attempted first-degree murder. At sentencing, the trial judge imposed the "high" presumptive sentence on both counts and ran the sentences consecutively. Coleman's criminal history score of C included prior juvenile adjudications.

State v. Coleman, 30 Kan. App.2d 988, 989-991, 56 P.3d 290, 293-94 (2002)(Coleman I).

On appeal to the Kansas Court of Appeals, petitioner asserted the following: 1) his Fifth and Sixth Amendment rights were violated by the admission of his statement to the police; 2) the court erred in failing to instruct the jury on a lesser offense; and, 3) the court erred in allowing the inclusion of his juvenile adjudications in the criminal history score. Id. at 989. The Kansas Court of Appeals reversed after determining that the admission of his statement violated petitioner's constitutional rights. The Kansas Supreme Court granted the State's petition for review and reversed. State v.

<u>Coleman</u>, 275 Kan. 796, 69 P.3d 1097 (2003)(<u>Coleman II</u>).[2]

Petitioner then sought post-conviction relief under K.S.A. 60-1507. The state district court denied relief and the Kansas Court of Appeals affirmed. <u>Coleman v. State</u>, No. 95,307 (Kan. Ct. App. Sept. 15, 2006)(<u>Coleman III</u>). Petitioner did not seek review by the Kansas Supreme Court. Petitioner also filed a pro se motion to correct an illegal sentence. The state district court denied relief, the Kansas Court of Appeals affirmed and the Kansas Supreme Court denied review.

## II. ANALYSIS

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Id.</u> § 2254(d)(2).

> A state court decision is "contrary to"
> Supreme Court precedent in two circumstances: (1)
> when "the state court applies a rule that
> contradicts the governing law set forth in [the

---

[2] The Kansas Supreme Court denied petitioner's request for review. The only issue before the Kansas Supreme Court was whether the trial court erred in admitting petitioner's statement.

Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411, 120 S. Ct. 1495; <u>see also</u> <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing <u>Williams</u>).

Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Smith v. Mullin</u>, 379 F.3d 919, 924-25 (10th Cir. 2004).

<u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of <u>federal</u> law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

As is customary with <u>pro</u> <u>se</u> § 2254 applications, petitioner has made no effort to explain why his application should be considered

-5-

under the narrow standards of the AEDPA.  Instead, he merely argues the same issues he presented, unsuccessfully, to the state courts. This court firmly believes that petitioner's application could be, and should be, denied out of hand for this reason.  However, in the absence of Tenth Circuit guidance, the court reluctantly proceeds to consider petitioner's claims on their merits (or rather lack thereof).

### A.   Failure to Instruct

Petitioner first asserts that the trial court erred by failing to give the jury an instruction that explained the lesser included offense. During trial, both counsel requested PIK Crim.3d 68.09.[3] However, while printing the instructions, the court inadvertently omitted the instruction.  The Kansas Court of Appeals' determined that the failure to give the instruction was not error since the instructions given to the jury covered the substance of the missing instruction.  Coleman I, 30 Kan. App.2d at 1001-02.

The standard for obtaining federal habeas relief for erroneous jury instructions is extraordinarily high, requiring petitioner to

---

[3] The instruction read as follows:
"The offense of Attempted Murder in the First Degree with which Mr. Coleman is charged includes the lesser included offenses of Attempted Second Degree Murder and Attempted Second Degree Murder, Unintentional.

"You may find Mr. Coleman not guilty, or guilty of Attempted First Degree Murder, Attempted Second Degree Murder or Attempted Second Degree Murder, Unintentional.

" When there is reasonable doubt as to which of two or more offenses Mr. Coleman is guilty, he may be convicted of the lesser offense only.

"Your presiding juror should sign the appropriate verdict form. The other verdict forms are to be left unsigned."

Coleman I, 30 Kan. App.2d at 1001.

show that the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1737, 52 L. Ed. 2d 203 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973)).  A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir.), cert. denied, 498 U.S. 961, 111 S. Ct. 393, 112 L. Ed.2d 402 (1990).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737, 52 L. Ed.2d 203 (1977).

While the jury was not given PIK Crim.3d 68.09, it was instructed that "[i]f you do not agree that the defendant is guilty of attempted first-degree murder in count one (1), you should then consider the lesser included offense of attempted second degree murder." Coleman I, 30 Kan. App.2d at 1001.  Attempted second degree murder was then defined in the instruction.  (Instruction No. 8).  Based on the instructions given, the jury could have decided that petitioner was guilty of the lesser included offense, attempted second degree murder.  Moreover, counsel argued to the jury that the charges included a lesser included offense for the jury to consider.  The court finds that the jury was properly instructed on both attempted first and second degree murder.  While PIK Crim.3d 68.09 is a proper statement of Kansas law and would have been appropriate, the failure to give the instruction does not rise to the level of an error that rendered the

trial so fundamentally unfair as to cause a denial of a fair trial.

### B.   Admission of Petitioner's Statement

Next, petitioner alleges that his Fifth and Sixth Amendment rights were violated by the admission of his statement to the police. The Kansas Supreme Court determined that the admission of the statement did not violate petitioner's rights because Coleman initiated contact with the police and his statement was voluntary. Coleman II, 275 Kan. at 808-09.   The facts determined at the sentencing hearing were as follows:[4]

> Coleman was charged and jailed on September 28, after Coleman made his second statement to police. At his first appearance, Coleman requested a court-appointed attorney and the public defender's office was appointed. While Coleman was in jail, Mayson [petitioner's girlfriend] attempted to contact Assistant District Attorney Kim Parker to find out what was going on with Coleman's case. Although Coleman did not initially ask Mayson to call the district attorney's office, when he learned that she had been attempting to talk to Parker, he told Mayson to ask why he was being charged.
>
> Parker testified she had received phone messages from someone she believed to be Coleman's aunt who thought Coleman was a lesser participant in the event and wanted some consideration for him. Parker gave Detective Jacob the woman's name so he could contact her and tell her that Parker was no longer handling the case.
>
> Detective Jacob testified that on October 17, he and Detective Nevil attempted to contact Mayson to relay Parker's message that Mayson should direct her questions to Assistant District Attorney David Kaufman because he was assigned to Coleman's case rather than Parker. The detectives went to Mayson's home and spoke with her mother, who then directed them to the home of Lynettee Mayson, Mayson's grandmother, thinking Mayson might be there. The detectives spoke with Lynettee, who told them Mayson was "laying low." Detective Jacob relayed Parker's message. According to Detective Jacob, Lynettee told him that Coleman was a good boy and he wanted to cooperate or make

---

[4] Petitioner has not challenged the factual findings of the state district court.

a deal. Detective Jacob advised Lynettee that Coleman had been appointed an attorney and that "we cannot contact him unless he contacts us." Lynettee took down Kaufman's name and said she would give the message to Mayson.

Detective Nevil, who accompanied Detective Jacob to Lynettee's house, was asked only a few questions at the hearing. He testified: "The message we wanted to get across to the grandmother was that Kim Parker was not the attorney on the case and that if she had a message or if she had information for the district attorney, she should get in touch with District Attorney David Kaufman." Detective Nevil was asked whether he or Detective Jacob said anything to Lynettee about making a deal. He responded, "That absolutely did not happen."

Lynettee remembered the conversation with the detectives differently. She testified the detectives told her that they thought Coleman was a good kid, they did not believe Coleman had anything to do with the robbery, and they would like Coleman to contact them so they could make a deal with him. Lynettee then talked to Coleman the next day and told him the detectives wanted him to call them to make a deal.

Coleman testified that Lynettee told him the detectives had come looking for Mayson and said they wanted to talk to him but could not contact him because he had an attorney and that he had to initiate the contact. Coleman testified he stayed up all night thinking and praying about whether he should call the police. The next day, Coleman called Detective Jacob from the jail. Coleman stated "it was not in ... my mind" to call his attorney, even though he knew her name and had already met with her.

When Coleman called Detective Jacob, the detective knew that charges had been filed and an attorney had been appointed for Coleman. He did not inform either the district attorney or Coleman's court-appointed attorney that Coleman had contacted him. Detective Jacob went to the jail and took Coleman into an interview room. Before engaging in any substantive discussion, Detective Jacob presented Coleman with a form which included the Miranda rights and asked Coleman to read each right aloud and initial each one if he understood the information. Coleman did so. Coleman then signed the waiver of rights and also wrote at the bottom of the form: "I called the detectives around 10:30 a.m. from my pod, and I asked them to come and speak with me." During the interview, which lasted 60 to 90 minutes, Coleman never requested an attorney and never stated that he wished to end the interview.

Coleman stated that after filling out the Miranda

waiver form, he asked why the detectives had wanted to talk
to him. According to Coleman, the detectives told him the
district attorney's office was the one that would make any
deals. Coleman testified that the detectives told him they
would call the district attorney's office as soon as the
interview was over but that he would have to give them some
information to relay in order to work out a deal.

Coleman II, 275 Kan. at 798-800.

The state trial court concluded:

[T]his interview on October 18 was essentially
initiated through the contacts that Tiffany Mayson and
perhaps this aunt had with Ms. Parker.... Detective Jacob
testified and his testimony was supported by the testimony
of Detective Nevil, that they went to that home to
basically inform Ms. Mayson of the new attorney, of the
different attorney, it is clear that this whole situation
had its genesis in the actions of both Mr. Coleman and
Tiffany.

They went to that home not to solicit a statement from
Mr. Coleman. I am convinced from the evidence that they
went there solely in an investigative manner or whatever,
but it was not to solicit a statement from Mr. Coleman. I
am convinced from the evidence, clearly convinced from the
evidence that they did nothing improper in their
conversation with Ms. Mayson.... I find that Mr. Coleman on
his own solicited the contact ..., but all the events ...
were initiated by Mr. Coleman and ... I find that the
statement is admissible....

Id. at 801.

Petitioner's right to counsel had clearly attached at the time

the interview occurred. United States v. Baez-Acuna, 54 F.3d 634, 637

(10th Cir. 1995).  "If, however, the accused initiates further

communication with the police . . . the question then becomes simply

whether the accused knowingly and intelligently waived his rights to

counsel and to silence."  Toles v. Gibson, 269 F.3d 1167, 1181-82

(10th Cir. 2001)(citing Oregon v. Bradshaw, 462 U.S. 1039, 1045-46,

103 S. Ct. 2830, 77 L. Ed.2d 405 (1983).  In this case, the state

district court determined, and the Supreme Court of Kansas agreed,

-10-

that petitioner initiated contact with the police and that he knowingly waived his <u>Miranda</u> rights. The factual findings by the state district court are presumed to be correct under 28 U.S.C. § 2254(e)(1) and petitioner has failed to come forward with evidence sufficient to overcome that presumption.

Having reviewed the entire record and totality of the circumstances, the court finds no clear error in the district court's finding petitioner initiated his post-arrest, post-arraignment conversation with detective Jacob, and there was no deception, intimidation or coercion sufficient to taint petitioner's waiver of rights under the Fifth, Sixth, and Fourteenth Amendments. Accordingly, petitioner's waiver of counsel and post-arrest statements were voluntary, knowing and intelligent. Petitioner's request for habeas relief on this ground is denied.

### C.   Remaining Claims

Respondent argues that petitioner's remaining claims are procedurally defaulted. When a federal habeas petitioner's claim has been defaulted in state court on an independent and adequate state ground, federal habeas courts will not generally address the issue. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Klein v. Neal</u>, 45 F.3d 1395, 1397 (10th Cir. 1995) ("It is now beyond cavil that the adequate and independent state ground doctrine is fully applicable to federal court review of habeas corpus petitions."). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." <u>Hickman v. Spears</u>, 160 F.3d

1269, 1271 (10th Cir. 1998).   Under those circumstances, a federal habeas court will only consider a claim if the petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice."   English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

**1.   Ineffective Appellate Counsel**

Petitioner asserts that his appellate counsel was ineffective for failing to raise the issue of insufficiency of the evidence on appeal. Petitioner raised this issue on direct appeal, but failed to petition the Kansas Supreme Court for review.   A state prisoner cannot petition for federal habeas corpus relief "unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).   "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."   Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).   "The exhaustion requirement is satisfied if the highest court exercises discretion not to review the case." Id. Kansas law provides an entitlement to certiorari review by the Kansas Supreme Court. See K.S.A. § 20-3018(b).   Petitioner failed to seek this discretionary review within thirty days of the date of the Kansas Court of Appeals' decision on his direct appeal.   Accordingly, petitioner's claim is not properly before this court.

However, if the Kansas Supreme Court would now find the claims procedurally barred, petitioner's claims are procedurally defaulted for purposes of federal habeas.   Coleman, 501 U.S. at 735. Since petitioner failed to seek timely review in the Kansas Supreme Court, a return to state court at this point would be futile.   Therefore,

-12-

petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. Cause for default must be some objective factor, external to petitioner and his counsel, "something that cannot fairly be attributed to [them]." <u>Id.</u> at 753. "Examples of such objective factors include a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." <u>Klein v. Neal</u>, 45 F.3d 1395, 1400 (10th Cir. 1995)(internal quotations and citations omitted).

To establish cause for failing to appeal this claim, petitioner asserts that the Kansas Court of Appeals denied him the right to appellate counsel. (Doc. 1 at 5.) First, there is no indication in the record that petitioner requested counsel from the Kansas Court of Appeals. Second, petitioner has no constitutional right to counsel in a collateral post-conviction proceeding. <u>Baker v. Kaiser</u>, 929 F.2d 1495, 1498 (10th Cir. 1991)(the "sixth amendment right to assistance of counsel applies to the statutory ten-day period for filing a notice of intent to perfect an appeal."); <u>Holt v. Saiya</u>, 28 Kan. App.2d 356, 362, 17 P.3d 368 (2000)("Kansas law is clear that in collateral post-conviction proceedings, an inmate does not have a constitutional right to counsel. . ."). Therefore, petitioner has failed to establish cause for his failure to seek review from the Kansas Supreme Court. Moreover, petitioner has neither alleged nor shown prejudice. Because cause <u>and</u> prejudice must be shown, petitioner has not overcome the procedural default.

Finally, a fundamental miscarriage of justice in this context means that the petitioner is probably innocent of the crime. <u>Phillips v. Ferguson</u>, 182 F.3d 769, 774 (10th Cir. 1999). A review of the record shows that the evidence was sufficient for a trier of fact to find that petitioner aided and abetted in committing first degree attempted murder. Hence, the court finds no fundamental miscarriage of justice. Therefore, this claim of ineffective assistance of counsel is procedurally defaulted.

### 2.  Sufficiency of Evidence

Petitioner next claims that there was insufficient evidence of specific intent to find him guilty beyond a reasonable doubt of attempted first-degree murder. The Kansas Court of Appeals, however, did not consider this claim because the issue was not raised in his direct appeal. Rather, petitioner raised this issue on collateral appeal. <u>Coleman III</u>, No. 95,307. Respondent asserts that this issue is procedurally defaulted.

The Kansas Court of Appeals relied on the case of <u>State v. Williams</u>, 275. Kan. 284, 288, 64 P.3d 353, when it found petitioner had waived his right to raise this issue. It is clear that the Kansas Court of Appeals determined this issue adversely to petitioner on an independent state ground. The court's decision was based on the Kansas precedent refusing to hear issues on collateral appeal that should have been raised on direct appeal. The Court considered no federal precedent of any kind in reaching its determination. Thus, the Kansas Court of Appeals relied on an independent and adequate state ground in finding petitioner's claim was not reviewable in a collateral proceeding.

-14-

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750.  To establish cause for failing to raise the issue on direct appeal, petitioner alleges ineffective appellate counsel.  Ineffective assistance of counsel can also be cause for procedural default, <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  However, the court has already determined that petitioner's ineffective assistance of appellate counsel claim been procedurally defaulted and, therefore, cannot constitute "cause" for his procedural default in state court.  <u>Sherrill v. Hargett</u>, 184 F.3d 1172, 1176 (10th Cir. 1999); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)(claim for ineffective assistance of counsel cannot constitute cause if it was not fully presented in the state courts).  Petitioner has also failed to allege or show any prejudice.  Because cause <u>and</u> prejudice must be shown, petitioner has not overcome the procedural default.

Finally, as previously stated, the court finds no fundamental miscarriage of justice.  Therefore, this claim of insufficient evidence is procedurally defaulted.  Petitioner's application for habeas corpus relief on this ground is denied.

**3.   Defective Complaint**

In his final claim, petitioner argues that the complaint was defective because it failed to allege premeditation.  (Doc. 1 at 5B.) Petitioner raised this issue after filing both his direct and collateral appeal.  Petitioner entitled his motion "Pro Se Motion to Correct Illegal Sentence." Petitioner's motion was denied.  The Court

of Appeals affirmed, citing Supreme Court Rule 7.041 and <u>State v.
Nash</u>, 281 Kan. 600, 133 P.3d 836 (2006).  The Kansas Supreme Court
denied review.

In <u>Nash</u>, 281 Kan. 600, the Kansas Supreme Court held:

> An illegal sentence under K.S.A. 22-3504(1) is "a
> sentence imposed by a court without jurisdiction, a
> sentence which does not conform to the statutory provision,
> either in the character or the term of the punishment
> authorized, or a sentence which is ambiguous with respect
> to the time and manner in which it is to be served." <u>State
> v. Gayden</u>, 281 Kan. 290, Syl. ¶ 1, 130 P.3d 108 (2006). The
> relief available under the statute is correction of a
> sentence, rather than reversal of a conviction.
>
> The district court denied the motion on the merits.
> Neither the district court nor the parties have addressed
> whether or not the relief sought was available under K.S.A.
> 22-3504.
>
> The defendant herein is seeking reversal of his
> conviction of aggravated robbery as opposed to correction
> of the sentence imposed on the conviction. In essence, the
> defendant is seeking to use the correction of an illegal
> sentence statute as the vehicle for a collateral attack on
> a conviction. Such relief is not available under K.S.A.
> 22-3504.
>
> The district court should have denied relief on the
> basis that the only relief sought was not available under
> the statute. However, where the trial court reaches the
> right result, it will not be reversed even though its
> reasoning was not correct. <u>State v. Graham</u>, 277 Kan. 121,
> 133, 83 P.3d 143 (2004).
>
> The district court correctly denied relief although
> for the wrong reason.

<u>Id.</u> at 601-02.

It is clear that the Kansas Court of Appeals determined this
issue adversely to petitioner on an independent state ground.  The
court's decision was based on the Kansas Supreme Court's ruling that
a petitioner cannot attack a conviction through a motion to correct
an illegal sentence.  The court did not consider the merits of

-16-

petitioner's claim.  The Court considered no federal precedent of any kind in reaching its determination.  Thus, the Kansas Court of Appeals relied on an independent and adequate state ground in finding that the relief petitioner sought was not available.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750.  Petitioner has neither alleged nor shown cause and prejudice.  Therefore, petitioner has not overcome the procedural default.  Moreover, the court has found that no fundamental miscarriage of justice exists.

Petitioner's claim of illegal sentence is accordingly procedurally defaulted.  Petitioner's application for habeas corpus relief on this ground is denied.

## III. CONCLUSION

Petitioner's application for habeas corpus is denied.  (Doc. 1).

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and

-17-

shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

        IT IS SO ORDERED.

        Dated this   17th   day of August 2007, at Wichita, Kansas.


                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE